Case 2:18-cv-00061   Document 44   Filed on 08/19/19 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
August 20, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| RAMIRO OMAR RAMOS, *et al*, § § Plaintiffs, § VS. § JOE BALBOA, *et al*, § § Defendants. § § § § | CIVIL NO. 2:18-CV-61 |

# ORDER

The Court is in receipt of the parties' Joint Motion for Approval of Settlement and Dismissal, Dkt. No. 37; the Sealed Settlement Agreement, Dkt. No. 38; Joint Motion to File Settlement Agreement Under Seal, Dkt. No. 39; Plaintiffs' Unopposed Motion for Attorney's Fees, Dkt. No. 41; and Plaintiffs' Motion for Status Conference Hearing, Dkt. No. 42.

For the reasons below, the Court **GRANTS** the Joint Motion for Approval of Settlement Agreement, Dkt. No. 37; **DENIES** the Joint Motion to File Settlement Agreement Under Seal, Dkt. No. 39; **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for Attorney's Fees, Dkt. No. 41; and **STRIKES AS MOOT** Plaintiffs' Motion for Status Conference Hearing, Dkt. No. 42.

## I.  Background

On February 27, 2018, Plaintiffs Ramiro Omar Ramos ("Ramos"), James Lohman, John Aranda, and Orlando Garcia (collectively "Plaintiffs") filed a Fair Labor Standards Act ("FLSA") action against Defendant Rocks Discount Vitamins, Inc. d/b/a Rocks Discount Vitamins 'N' More #1 ("Rocks Discount"); Joe Balboa; Omar Gonzalez, Maria E. Balboa, Elizabeth Gonzales, and Nick Vega (collectively "Defendants"). Dkt. No. 1.

The parties have engaged in discovery and investigation, as well as arm's length negotiations. Dkt. No. 37 at 3. After two mediations, they reached an

agreement to settle this lawsuit on November 12, 2018. *Id.*; Dkt. No. 32. The parties have filed their Joint Motion for Approval of Settlement and Dismissal, Dkt. No. 37; the Sealed Settlement Agreement, Dkt. No. 38; Joint Motion to File Settlement Agreement Under Seal, Dkt. No. 39; and Plaintiffs' Unopposed Motion for Attorney's Fees and Costs, Dkt. No. 41. The Court now considers the pending motions.

## II. Class Settlement Terms

The parties reached a settlement based on a payment to Plaintiffs reflecting a compromise but not an admission of liability. Dkt. No. 38. Under the settlement agreement, Defendants will pay a total sum of $230,000—$104,396.57 of which will be paid to Plaintiffs, and $125,603.43 of which will be paid to counsel for their attorney's fees, costs, and expenses. Each Plaintiff will receive their share of the settlement as follows: (1) one half as back wages, from which taxes will be withheld and for which a W-2 will be issued; and (2) one half as liquidated damages, for which a Form 1099 will be issued. *Id.* at 3–4. In exchange for the payments set forth in the settlement agreement, Plaintiffs will waive, release, and discharge Defendants from any and all claims for unpaid overtime wages, underpaid wages, unpaid wages, liquidated or other damages, penalties, restitution, attorney's fees, costs, and interest, including but not limited to, claims under the FLSA, or any other federal, state, or local law pertaining to the payment of wages or their employment during the period as defined in the settlement agreement. *Id.*; Dkt. No. 37 at 3.

## III. Motion for Approval of Settlement Agreement
### a. Legal Standard

The parties should be aware of the legal standard applicable to the Court's review of FLSA settlement agreements. *See* Dkt. No. 36. To reiterate, courts may approve FLSA settlement agreements only if they reflect "a fair and reasonable compromise of a bona fide dispute under the FLSA." *Beardslee v. Randalls Food &*

*Drugs LP*, No. H-09-1200, 2009 WL 1957714, at *1 (S.D. Tex. July 7, 2009). When scrutinizing an FLSA settlement agreement, courts first look to the existence of a bona fide dispute. *Villeda v. Landry's Restaurant, Inc.*, No. H-08-2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009). A bona fide dispute as to liability exists where the evidence in the record is inconclusive as to the hours worked or the amount of compensation owed. *Sandlin v. Grand Isle Shipyard, Inc.*, No. 17-10083, 2018 WL 2065595, at *6 (E.D. La. May 3, 2018). For example, parties may point to conflicting evidence in the record as to the hours worked or wages owed[1] or evidence demonstrating that it is impossible to determine those amounts.[2] Submission of the settlement agreement containing conclusory language stating the release of claims in exchange for a certain amount, without more, is insufficient to prove a bona fide dispute.[3]

      Courts then look to whether the proposed settlement is a fair and reasonable compromise over the issues. "If the settlement reflects 'a reasonable compromise over the issues,' the court may approve it." *Villeda*, 2009 WL 3233405, at *1. (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)); *see also Jarrard v. Se. Shipbuilding Corp.*, 163 F.2d 960 (5th Cir. 1947). "The standard for whether a class action settlement should be approved is whether the settlement is 'fair, adequate and reasonable' and has been entered into without collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lynn's Food Stores*, 679 F.2d at 1355.

---

[1] *See Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005) (finding bona fide dispute where plaintiff maintained in his statement that he was owed over $3,000 in overtime compensation and defendants presented conflicting evidence that plaintiff was owed only $509.06).

[2] *See Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 255 (5th Cir. 2012) (finding bona fide dispute where evidence included union representative's conclusion that "it would be impossible to determine" actual hours worked).

[3] *See Lopez v. S. Arch, LLC*, No. 15-6302, 2016 WL 3617671, at *5 (E.D. La. July 6, 2016) (finding no bona fide dispute where parties only offered as evidence the settlement agreement containing "broad, boilerplate language stating that plaintiff released all claims [and] acknowledged that 'he is entitled to receive no other payments, benefits, or compensation' from Defendants besides his $500 settlement").

"Although the class-action provisions of Federal Rule of Civil Procedure 23 technically do not apply to collective actions under the FLSA, Rule 23(e) is similar because it requires a court approval to finalize a proposed class action settlement." *Sims v. Hous. Auth. City of El Paso*, No. EP-10-CV-109, 2012 WL 10862119, at *3 (W.D. Tex. Feb. 29, 2012). "Thus, the Rule 23(e) standard encompasses the 'fair and reasonable' settlement standard of the FLSA collective action, and cases interpreting Rule 23(e) are analogous and applicable to the instant FLSA action." *Id.* at 2. (quoting *Altier v. Worley Catastrophe Resp., LLC*, Nos. 11-241, 11-242, 2012 WL 161824, at *14 (E.D. La. Jan. 18, 2012)).

The Fifth Circuit directs courts to consider six factors in evaluating proposed settlement agreements in class actions: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).

### b. Bona Fide Dispute

The parties have demonstrated that the settlement of Plaintiffs' FLSA claims reflect "a fair and reasonable compromise of a bona fide dispute under the FLSA." *Beardslee*, 2009 WL 1957714, at *1. In their complaint, Plaintiffs allege the following:

> "Plaintiffs worked six (6) days a week (Monday to Saturday) from 10:00 a.m. to 8:00 p.m. To learn of [] their job assignments the following work day, Plaintiffs' job responsibilities required accessing their mobile phones (while at home) in order [to] monitor employer job directives posted on a social media website, mainly Facebook. The social media-posted job directives would advise Plaintiffs of (1) the type/amount of inventory gathered at the main branch i.e. Saratoga Street the following morning; and (2) the locale where the inventory was to be delivered the following morning. At the end of the workday, Plaintiffs were required to travel to the Saratoga store again to drop [] off money from the sale of goods at Defendants' locales. Consequently,

> Defendants only paid Plaintiffs for scheduled shifts at their store. Defendant did not account nor did they pay Plaintiffs for loading inventory and travel time before and after scheduled work hours."

Dkt. No. 1 at 6. Plaintiffs allege that they were each paid "80 hours at $12.00 hour and 20 hours at time and a half (i.e., $18.00)." *Id*. at 5. They assert that "[w]hile they were paid some overtime, Defendants did not accurately calculate and compensate all compensable hours of work." *Id*. Further, Ramos alleges that his "termination was in retaliation for [his] internal complaint concerning the unpaid hours worked by himself and other supplement sales representatives." *Id*. at 6. However, Defendants assert that Plaintiffs were properly paid and compensated for all hours worked and deny terminating Ramos in retaliation. Dkt. No. 37 at 5.

The Court finds the existence of a bona fide dispute as to the hours worked and compensation owed. Plaintiffs allege that they deserve pay for hours worked "before the official start of work hours, including loading of inventory and travel time" and hours worked after work hours "to deliver cash payments from the sale of vitamins/supplements" and "to monitor social media . . . to learn of job assignments [for] the following work day." Dkt. No. 37 at 5. Defendants deny that any compensation should be owed for these hours worked, arguing that "Plaintiffs were accurately paid." *Id*. The Court therefore concludes that the parties' disagreement over the hours worked and overtime pay owed sufficiently amounts to a bona fide dispute.

### c. There Is No Evidence that the Settlement Was Obtained by Fraud or Collusion

The parties here were represented by counsel. Moreover, the settlement was reached through arm's length negotiations in which a neutral mediator was present. *See* Dkt. No. 37 at 3. Under these circumstances, courts have found that class action settlements are free of fraud or collusion. *See Batchedler v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 526 (N.D. Miss. 2003). There is no reason to question counsels' assertion that the settlement engagement is anything but the product of arm's

length negotiations undertaken in good faith after investigation and legal analysis. *See San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 458 (W.D. Tex. July 12, 1999).

### d. Litigation of this Case Would Likely Be Complex, Expensive, and Protracted

"In determining whether to approve the settlement, a court must also consider the complexity, expense, and likely duration of the litigation." *Quintanilla v. A&R Demolition, Inc.*, No. H-04-1965, 2008 WL 9410399, at *4 (S.D. Tex. May 7, 2008). Both parties expressed their intent to serve interrogatories and take various depositions prior to the close of discovery, in addition to trying this case, which would require additional time and expenses. Dkt. No. 21 at 2–3. A lengthy trial would consume court resources and potentially subject the case to protracted appeals. Furthermore, trial would not only expand the Plaintiffs' costs but also delay any eventual recovery.

### e. The Litigation Has Reached a Stage at Which the Parties Can Accurately Assess Whether Settlement Is Beneficial to the Parties

The extent of discovery required for parties to have sufficient information to make an informed assessment of the settlement and for the court to be able to determine the fairness of the compromise is left to the discretion of the court. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Here, the parties completed extensive discovery, substantial negotiations, and two mediations. Dkt. No. 37 at 3. The discovery and negotiation that took place before reaching settlement enabled counsel for the parties to carefully assess the legal and factual merits of the case. *Quintanilla*, 2008 WL 9410399, at *4; *see In re Cendant Corp. Litig.*, 264 F.3d 201, 235–36 (3d Cir. 2001).

### f. It Is Possible that Plaintiffs Would Not Prevail on the Merits

The parties disagree whether Plaintiffs could satisfy their burden of proving whether the Defendants acted willfully. Dkt. No. 37 at 6. The question of willfulness would affect the amount of back wages that Plaintiffs would be eligible to recover. *Id*. Moreover, disputed issues existed as to whether Defendants could establish their actions were done in good faith, calling into question the availability of liquidated damages. *Id*. Plaintiffs' counsel has also identified the U.S. Department of Labor's lack of guidance regarding the compensability of social media time as an example and recognition of the uncertain outcome of litigation.

### g. The Range of Possible Recovery and Certainty of Damages Supports the Settlement

Courts must determine whether the settlement is "pegged at a point in the range that is fair to the plaintiff settlors" by establishing the range of possible damages that could prevail at trial. *In re Corrugated Contained Antitrust Litig.*, 643 F.2d 195, 213 (5th Cir. 1981). Plaintiffs prevailing in FLSA cases are entitled to back wages, liquidated damages in an equal amount, attorney's fees, and litigation costs. *See* 29 U.S.C. § 216(b).

Here, the settlement will pay each Plaintiff a fair recovery for unpaid wages/overtime and liquidated damages. Dkt. No. 38 at 3–4. The Court also takes into account "the risks inherent in this litigation, as well as the costs of litigation" in determining whether the settlement amount is fair and reasonable. *Quintanilla*, 2008 WL 9410399, at *5. Further, proposed settlements that amount only to a fraction of the potential recovery do not indicate that the settlement is not fair and reasonable. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974). The Court finds that the settlement agreement represents a fair and reasonable compromise of the FLSA claims at issue in this case.

### h. The Opinions of Plaintiffs and Counsel Support the Settlement

The settlement is the product of arm's length negotiations after an extensive factual investigation and legal analysis by the parties' counsel. Dkt. No. 37 at 3. The settlement was negotiated with the assistance of a mediator, Tony Pletcher. Dkt. No 34 at 1. The parties entered into the settlement agreement voluntarily and knowingly. Dkt. No. 38 at 1. The terms of the settlement have been approved by Plaintiffs, Defendants, and their respective counsel. *Id*. Endorsement of a proposed FLSA agreement by counsel for both parties is a "factor that weighs in favor of approval." *Quintanilla*, 2008 WL 9410399, at *5. "Counsel for each side posses[es] the unique ability to assess the potential risks and rewards of litigation." *Id*.

## IV. Motion for Approval of Attorney's Fees and Costs

### a. Legal Standard

#### i. Attorney's Fees

Under the FLSA, courts "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Courts use the lodestar method to assess attorney's fees in FLSA suits. *See Saizan v. Delta Concrete Prods., Co.*, 448 F.3d 795, 799 (5th Cir. 2006). "In calculating a lodestar, the number of hours reasonably expended are multiplied by an appropriate hourly rate in the community for such work." *Villegas v. Regions Bank*, No. H-11-904, 2013 WL 76719, at *2 (S.D. Tex. Jan. 4, 2013) (citing *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003)).

The party seeking reimbursement of attorney's fees "bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence." *Ranger v. Gonzalez Mascorro*, 274 F.R.D. 585, 595 (S.D. Tex. 2011) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990)). The court should use this time "as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented." *Id.* (citing *Watkins*, 7 F.3d at 457). The hours remaining are those reasonably expended. *Id*. However, the court anticipates

that "[c]ounsel exercises billing judgment when it documents hours charged and the hours written off as unproductive, excessive, or redundant." *Martinez v. Refinery Terminal Fire Co.*, No. 2:11-CV-295, 2016 WL 4594945, at *2 (S.D. Tex. Sept. 2, 2016).

A reasonable hourly rate should be determined based on "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Rangel*, 274 F.R.D. at 596 (quoting *Normam v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)) (internal quotation marks omitted). The relevant legal community is the community in which the court sits. *Id.* (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)). "The movant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates in the community." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). Proper evidence of a reasonable hourly rate "includes an attorney's own affidavit presenting information as to the rates actually billed and paid in similar lawsuits." *Id.* (citations omitted). Generally, however, the reasonable hourly rate for a community is established "through affidavits of other attorneys practicing there." *Id.* (citing *Tollett*, 285 F.3d at 368). Such affidavits "should contain direct or opinion evidence as to what local attorneys would charge under similar circumstances." *Id.* (citation omitted).

"After calculating the lodestar, the court may either (1) accept the lodestar figure or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors."[4] *Williams v. Best Temp. Servs., LLC*, No. 3:14-CV-484-D, 2015 WL 12763509, at *3 (N.D. Tex. Aug. 18, 2015) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324, 329 (5th Cir. 1995)).

---

[4] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974).

"Because the lodestar is presumed reasonable, it should be modified only in exceptional cases." *Id.* (citing *Watkins*, 7 F.3d at 457).

### ii. Costs

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d). Taxable costs include: "(1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of a deposition transcript; (3) witness fees and related expenses; (4) printing costs; and (5) fees for copies of papers necessarily obtained for use in the case." *Mauricio v. Philip Galyen, P.C.*, 174 F. Supp. 3d 944, 952 (N.D. Tex. 2016) (citing 28 U.S.C. §§ 1821 & 1920). The Court may decline to award statutory costs but "may not award costs omitted from the statute." *Id.* (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)).

### b. Legal Analysis
### i. Attorney's Fees

The first step in computing the lodestar is determining the reasonable hourly rate. *Villegas*, 2013 WL 76719, at *3. Plaintiffs' counsel Mauro Ruiz ("Ruiz") has provided information regarding his extensive experience in employment litigation. *See* Dkt. No. 41-1, Ex. A, Declaration of Mauro Ruiz. He has also provided an affidavit from another attorney who practices law in Corpus Christi (the relevant community) and has a similar level of experience (over twenty years), which attests to the reasonableness of counsel's requested $400 hourly fee. *See* Dkt. No. 41-2, Ex. B, Declaration of Christopher J. Gale. Additionally, counsel cites to *Martinez v. Refinery Terminal Fire Co.*, where the United States District Court for the Southern District of Texas determined that $400 was a reasonable hourly rate for two Corpus Christi attorneys with more than twenty years of experience. *Martinez v. Refinery Terminal Fire Co.*, No. 2:11-CV-295, 2016 WL 4594945, at *8 (S.D. Tex. Sept. 2, 2016).

Given counsel's experience, the affidavit of another Corpus Christi attorney, and cited caselaw, the Court determines that $400 is a reasonable hourly rate for Attorney Ruiz. Therefore, the reasonable hourly rate for travel time is $200. *See In re Babcock & Wilcox Co.*, 526 F.3d 824, 828 (5th Cir. 2008) (affirming award of attorney's fees at half the hourly rate for non-working traveling time); *Lewallen v. City of Beaumont*, No. 1:05-CV-733, 2009 WL 2175637, at *10 (E.D. Tex. July 20, 2009) ("[C]ompensating travel time at 50% of actual time is a common practice within the Fifth Circuit."); *In re Unger & Assoc.*, 277 B.R. 694, 698 (E.D. Tex. 2001) (reducing attorney's fees for travel time to half of hourly rate). Further, the Court finds that $100 is a reasonable hourly rate for the paralegal. *See Rouse v. Target Corp.*, 181 F. Supp. 3d 379, 390 (S.D. Tex. 2016) (citing *League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1235 (5th Cir. 1997)) ("The Fifth Circuit has found paralegal rates of $75 to $125 per hour reasonable.").

The second step in the lodestar calculation of attorney's fees is determining the number of hours that were reasonably expended on the litigation. *Villegas*, 2013 WL 76719, at *3. Plaintiffs' counsel seeks $94,000 in attorney's fees. According to Plaintiffs, prior to exercising billing judgment, their billing records indicated that Attorney Ruiz expended approximately 250.3 hours[5] at a $400 hourly rate, and the paralegal spent 68.6 hours at a $100 hourly rate, reflecting a total of $106,980.[6] *See* Dkt. No. 41. Counsel states that he exercised billing judgment by writing off half of the travel hours and all hours billed by the paralegal. Dkt. No. 41 at 5.

The Court does not find that Plaintiffs' counsel appropriately exercised billing judgment. Here, writing off half of the travel hours did not constitute as a true exercise of billing judgment—the attorney's fees sought after counsel's "reduction" of the travel time is the same amount as they would have been if

---

[5] Plaintiffs' exhibits indicate that Attorney Ruiz expended 219.7 hours working and 30.6 hours traveling. *See* Dkt. No. 41-6, Ex. F; Dkt. No. 41-7, Ex. G.
[6] The following is Plaintiffs' calculation of total attorney's fees before exercising billing judgment: (250.3 hours x $400) + (68.6 hours x $100) = $106,980.

counsel sought all travel time and properly calculated the travel hourly rate.[7] *See In re Babcock & Wilcox Co.*, 526 F.3d at 828 (affirming travel hourly rate as half of actual attorney hourly rate).

Moreover, the Court finds multiple instances in which counsel failed to write off hours that were "unproductive, excessive, or redundant." *Martinez*, 2016 WL 4594945, at *2. Attorney Ruiz's time records contain at least 16 instances of "receipt and review" of single emails that each took at least 30 minutes. *See* Dkt. No. 41-5, Ex. E. Taking at least 30 minutes to read an email is excessive, as the entries do not indicate that counsel drafted or sent emails, but instead only received and reviewed them. Records also include an entry of "Go[o]gle map search regarding location of all Rocks Store in the area" that expended 4.5 hours, a task that it is reasonable to infer could be completed within minutes. Dkt. No. 41-5, Ex. E, at 2. Another entry dated February 27, 2018, expending 4 hours to "Finalize original complaint," is redundant, where the paralegal already spent 2.5 hours drafting the complaint on February 15, 2018. *Compare* Dkt. No. 41-5, Ex. E, at 2, *to* Dkt. No. 41-6, Ex. F, at 1.

Further, Attorney Ruiz represents to the Court his background and experience in employment litigation:

- "At [previous] firms, I routinely handled cases involving workplace issues on behalf of claimants in addition to personal injury cases."
- "[After starting my own firm], I primarily represent employees in single and multi-party actions arising under a variety of laws governing the workplace, including . . . the FLSA."
- "I routinely litigate against firms like Ogletree Deakins and Littler, who represent employers in FLSA and workplace litigation."
- "While my clients are primarily employees, I have also represented employers in FLSA cases, including a Harlingen, Texas-based adult day care and a produce warehouse in Hidalgo, Texas."
- "I [have] also been a speaker on a variety of employment-related topics for the State Bar of Texas in 2015 and 2016."

---

[7] Plaintiffs' counsel reduced the travel time by 50% (30.6 hours to 15.3 hours), and multiplied the 15.3 hours to a full $400 hourly rate, reflecting a total of $6,120.00. However, a proper exercise of billing judgment would be reducing the travel time by 50% *and* multiplying the 15.3 hours to the proper $200 travel hourly rate, reflecting a total of $3,060.00.

Dkt. No. 41-1 at 2. Given Attorney Ruiz's extensive experience in workplace litigation and the noncomplex nature of this case, the Court finds it excessive that Attorney Ruiz expended at least 15 hours preparing and meeting with a labor law expert.[8]

"The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Saizan*, 448 F.3d at 799. Several courts in the Fifth Circuit reduce attorney's fees by 20% in similar cases where counsel fails to exercise billing judgment. *See, e.g.*, *Ramirez v. Lewis Energy Grp., LP*, 197 F. Supp. 3d 952, 959 (S.D. Tex. 2016); *Preston Expl. Co. v. GSP, LLC*, No. H-08-3341, 2013 WL 3229678, at *4 (S.D. Tex. June 25, 2013); *Mansfield Heliflight, Inc. v. Bell/Agusta Aerospace Co., LLC*, No. 4:06-CV-425-A, 2007 WL 4373259, at *8 (N.D. Tex. Dec. 12, 2007). The Court reduces the total properly billed amount of $100,860[9] by 20% and therefore awards Plaintiffs' counsel $80,688 in attorney's fees.

### ii. Costs

Plaintiffs seeks $1,057.78 in taxable costs, which reflect the total of the following: (1) $400 in filing fees; (2) $498.24 in service of process fees; and (3) $159.54 in postage and delivery expenses. Dkt. No. 41 at 16–17. Plaintiffs, however, may not recover the $498.24 paid to a private process server, which is not a taxable cost provided for in 28 U.S.C. § 1821 or § 1920. *See Mauricio*, 174 F. Supp. 3d at 952; *Honestech, Inc. v. Sonic Solutions*, 725 F. Supp. 573, 585 (W.D. Tex. 2010) ("Because private process server fees are not specifically enumerated in § 1920, which encompasses only fees paid to the United States Marshal for service of process, . . . the Court finds the private process server fees are not properly taxable as costs."). The Court therefore awards Plaintiffs' counsel $559.54 in costs.

---

[8] *See* Dkt. No. 41-5, Ex. E, Entries dated on 6/23/2017, 8/10/2017, 8/11/2017, 9/7/2017, and 9/8/2017.
[9] The following is the proper calculation of the total attorney's fees: (219.7 actual hours x $400) + (30.6 travel hours x $200) + (68.6 hours x $100) = $100,860.

V. **Motion to File Settlement Agreement Under Seal**

   a. **Legal Standard**

"In the FLSA context, there is a strong presumption in favor of keeping settlement agreements in FLSA wage-settlement cases unsealed and available for public review. The public's interest in accessing the settlement agreement, including the settlement amount, often outweighs any interest in confidentiality." *Rodriguez v. El Pollo Regio, Inc.*, No. 3:11-cv-2276-D, 2012 WL 5506130, at *1 (N.D. Tex. Feb. 23, 2012) (quoting *Prater v. Commerce Equities Mgmt. Co.*, 2008 WL 5140045, at *9 (S.D. Tex. Dec. 8, 2008)) (internal quotation marks omitted). "[T]he overwhelming consensus of district courts that have considered the issue [] hold that an FLSA settlement cannot be sealed absent some showing that overcomes the presumption of public access." *Joo v. Kitchen Table, Inc.*, 763 F. Supp. 2d 643, 647 (S.D.N.Y. 2011). "Sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair. Absent an extraordinary reason, the court cannot seal such records." *Tran v. Thai*, No. H-08-3650, 2009 WL 2477653, at *1 (S.D. Tex. Aug. 12, 2009).

In *Joo*, the United States District Court for the Southern District of New York found that the parties' reliance on case law generally indicating the "strong judicial policy in favor of settlements" was unavailing in the FLSA context. *Joo*, 763 F. Supp. 2d at 647 (citation and internal quotation marks omitted). Indeed, in *Tran*, the United States District Court for the Southern District of Texas concluded: "Settlement agreements that must be approved by the court are presumptively public once that are brought to the court. It is immaterial that sealing of the settlement agreement is part of a negotiated settlement between the parties." *Tran*, 2009 WL 2477653, at *1 (citation omitted).

   b. **Legal Analysis**

Sealing the settlement agreement is unwarranted here and would thwart the public's independent interest in assuring that employees' wages are fair. *See Tran*, 2009 WL 2477653, at *1. Although the parties assert that "[t]he settlement is the

product of arm's length negotiations of disputed claims that would not have been resolved without the understanding that Plaintiff[s] would maintain the settlement terms in confidence," Dkt. No. 39 at 2, it is "immaterial that sealing of the settlement agreement is part of a negotiated settlement between the parties" in the FLSA context. *Tran*, 2009 WL 2477653, at *1 (citation omitted).

Further, though the parties allege that sealing the settlement agreement will prevent public exposure of their financial information, the parties fail to specify what "personal financial information" they wish to keep private. Dkt. No. 39 at 2. The only financial information contained in the settlement agreement is the settlement amount for each of the Plaintiffs. "[A] preference not to disclose to the public the settlement amount—a feature of every monetary settlement—is hardly an extraordinary reason to justify sealing the settlement agreement here." *Johnson v. Bodi Servs., LLC*, No. 5:17-cv-123, 2018 WL 3198437, at *2 (S.D. Tex. June 29, 2018). The Court concludes that the parties do not posit any extraordinary reason for the Court to seal the agreement.

## VI.   Conclusion

Accordingly, the Court **GRANTS** the Joint Motion for Approval of Settlement Agreement, Dkt. No. 37; **DENIES** the Joint Motion to File Settlement Agreement Under Seal, Dkt. No. 39; **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for Attorney's Fees, Dkt. No. 41; and **STRIKES AS MOOT** Plaintiffs' Motion for Status Conference Hearing, Dkt. No. 42.

Further, the Court **AWARDS** $80,688 in attorney's fees and $559.54 in costs to Plaintiffs. Final judgment will be entered separately.

SIGNED this 19th day of August, 2019.

_____
Hilda Tagle
Senior United States District Judge